L. A. ANDREW, State Superintendent of Banking, Appellant, v. COUNTY SAVINGS BANK OF ALGONA et al., Appellees.

No. 39827.

DECEMBER 13, 1929.

*L. E. Linnan* and *G. W. Stillman*, for appellant.

*W. B. Quarton* and *T. P. Harrington*, for appellee.

STEVENS, J.—The facts are not in dispute, and the sole question presented for decision is: Did the insolvent bank receive and hold the alleged fund of the claimant in trust at the time it became insolvent? On March 24, 1923, the P. E. O. Sisterhood of Algona deposited in a savings account in the County Savings Bank of Algona, Iowa, $301. This sum, with accessions, when the bank closed, amounted to $601.64. The fund was raised by voluntary subscription, as a memorial to Louise McCoy, a former teacher, now deceased, in the high school at Algona. The purpose of the fund was to provide an annual prize of $25, to be paid to the best student in the public speaking department of the local high school. The deposit drew interest at the rate of 5 per cent. The only withdrawals from the account were four checks of $25 each, which were used for the purpose of paying the prizes contemplated by those in charge of the fund.

The fund was deposited in a separate account, for which a

pass book was issued. The amount in the hands of the P. E. O. Society is clearly a trust fund. This, however, does not alone determine its character in the possession of the bank. To entitle the claimant to preferential payment by the receiver, the fund must have been held by the bank as trustee, and not as debtor. If the relationship between the society and the bank was that of creditor and debtor, then no trust existed, and preferential payment must be denied. It is true that the fund was procured and deposited in the bank to be used for a specific purpose. The account at the bank was kept separate and distinct from the general account of the P. E. O. Society therein. This segregation by the society enabled it at all times to identify and determine the exact status of the trust fund, and was obviously for the benefit of the society. The deposit, however, was not placed in the bank as a special deposit, to be kept and maintained thereby as such, to be used for a particular or specifically designated purpose. There was no arrangement or agreement between the depositor and the bank which bound the latter to hold the fund to be applied, or to apply it in payment of a particular obligation for investment or for any specific purpose of the society. In this respect the case is readily distinguishable from *Smith v. Sanborn State Bank,* 147 Iowa 640; *In re Receivership of Security Sav. Bank,* 205 Iowa 171; *Hanby v. First Sav. Bank,* 197 Iowa 150; *Dolph v. Cross,* 153 Iowa 289.

The bank acquired no special control over the fund, as a trust fund, nor was it authorized to pay it out without an order from the society. Although there appears to have been some conversation between the treasurer of the society and the president of the bank relative to the investment of the amount, no investment was actually authorized or contemplated, either by the bank or the society. The pass book issued to the treasurer of the society was identical with all others used in the savings account department of the bank. The only difference was that the bank paid 5 per cent, instead of 4 per cent, as was its custom on savings accounts. The fund deposited was not kept separate from the other funds of the bank, nor did either party to the transaction contemplate that it should be so kept. This did not change the relationship between the bank and the depositor. The account was subject to checks drawn by the treasurer of the society, and the bank had no right or authority to refuse payment

thereof. The account, therefore, as between the society and the bank, was a general account, and their relationship was that of creditor and debtor only. None of the elements of a trust relationship between the society and the bank existed. *Miller v. Andrew*, 206 Iowa 957; *Heckman v. Ottumwa Nat. Bank*, 208 Iowa 322; *Andrew v. Colo Sav. Bank*, 205 Iowa 872; and cases cited supra.

It follows that the finding and decree of the court awarding preferential payment of this claim must be, and it is, reversed.—*Reversed.*

ALBERT, C. J., and MORLING, WAGNER, and GRIMM, JJ., concur.